And we'll now hear United States v. Mayberry. Mr. Warren. Thank you, Your Honor. May it please the courts. My name is John Warren and I'm appointed counsel for attellant Cornelius Mayberry. This appeal raises two Fourth Amendment issues arising out of Mr. Mayberry's warrantless arrest and the warrantless search and seizure of his back. The government urges this court to endorse broad and sweeping standards for both probable cause and abandonment. But the government's constitutional arguments are in conflict with this court's precedent and would erode the fundamental protections of the Fourth Amendment. First I'd like to address the abandonment issue. This court has repeatedly cautioned that abandonment need cannot be casually inferred. Instead the government has the burden of proving abandonment through objective facts, words that are spoken, and actions. As we set forth in the brief, I think the district court really erred in three fundamental respects. The first is the district court placed, I think, significant emphasis on Mr. Mayberry's failure to claim ownership. Can I ask you a question about that? Tell me if I'm wrong, but I assume that if he did claim ownership, say after he's arrested, he says, oh I left my bag in the stairwell, keep an eye on it, I'm gonna send a friend to pick it up. That would be highly relevant to the analysis, right? If he did claim ownership, I think that's right. Then how can it be irrelevant that he didn't? I guess I'm just not understanding that. Why shouldn't the district court sort of check off and also he didn't do this thing that would have been highly relevant? So I don't think it is a condition preceding to abandonment. I have not found any cases where courts even inferred that it was something that was necessary in any way. I just sort of read the district court as saying, look, I've got these sort of objective things, and also he didn't claim ownership, which is relevant. I mean, it's good to get that on the record. So I don't think the failure to claim ownership is particularly relevant. But it's the opposite of the thing that you think is highly relevant. He did claim ownership. I guess I'm just not understanding how it can be relevant if he did, but then it doesn't matter that he didn't. Well, I do think it is a consideration that the court can take. I certainly don't think it's anything inhibited from the court considering. But I think what the cases say is... Well, do you think the court here did anything other than just consider that factor among a number of others? I think that the court considered that factor under a number of clearly erroneous other factors. I think the two things that I think are most problematic in this case are the objective facts and the inferences that were taken from them. And the second is the references to the post-arrest statements, or the alleged post-arrest statements, in the R&R, which was adopted and incorporated, and in the court's order. Let me start with the intent to abandon and what the objective facts are. So the reasonable, or the objective facts known were that Mr. Mayberry, who is unknown to law enforcement, he is not the person that the informant in this case identified, shows up to the hotel and walks inside... Are you talking about your abandonment argument or your unlawful seizure argument, or both? Both, but I think particularly I'm talking right now about the abandonment issue, because I think we have to look at what the objective facts are when the bag is seized and then searched. Well, are you saying that abandonment can be temporary? I mean, what is the legal principle of abandonment that you're relying on? I mean, is it an all-or-nothing proposition? Either you abandon for all time, or you don't, or is there a mid-ground that you're trying to argue here to us? I think that abandonment, by its very nature, is permanent. I mean, that's what the cases have said, is that it is when a person demonstrates through objective acts and or words an intention to permanently abandon a reasonable expectation of privacy in that bag. So you're not relying on any concept of temporary here? No, no, Your Honor. What I'm relying on is that the government has the burden of proving the relinquishment of that reasonable expectation of privacy. So let's kind of along that line. Let's assume you're the district court judge. You're sitting there. You're listening to this, and here's the evidence the judge had. You have a backpack. There's apparently no name tag or anything else on it. It's left in the middle of the room to anybody who wants to come along. There's no claim at any point by the defendant that this is my backpack. You can't get to it. That's what there is, and even though it's the government's burden of proof, what indication did the district court have that it was your client's backpack and that it was not abandoned? So I will say, Your Honor, I think both the government and the district court acknowledged it was my client's backpack. Law enforcement saw him walk into the building. Right, because that placed him there with with the crime, but there's no there's no claim or indication of dominion by him over this bag once he drops it. So I think in order to answer that, to put this in context, when my client walks into the building, goes up the stairwell, no one from law enforcement sees that occur. They see him walk in with the bag. Bag is placed on the floor, goes through the door, and within an extremely short period of time, law enforcement follows him in and tackles him and seizes him. So I don't think that there's any, there's frankly not any real objective information whatsoever about the circumstances that lead to the bag being set on the ground. One of the things that I think is most important is looking at this court's abandonment precedent, you really see one of two things, or sometimes both things, in the abandonment cases from this court. The first is you may see you see cases where the bag or other property is abandoned during flight, and the second is expressed disavowal of ownership. Farabee, there's a clear and unequivocal statement to law enforcement disavowing ownership of the bag. Frazier, from this year, defendants fleeing from law before being apprehended, throws a bag 40 feet into a public courtyard. Small, in 2019, a defendant in headlong flight from law enforcement crashes a vehicle, tosses his clothing and cell phone while fleeing from law enforcement. Stevenson, there is a letter from a defendant who says, signs the letter, former tenant, and says, I am turning over all personal property in my apartment to my ex- I have not found a published opinion of the 4th Circuit where flight or expressed disavowal is not present, and it's it's not disputed that neither of those things are present, are present in this case. To agree with you, wouldn't we have to find the district court clearly erred in finding abandonment, and how do we how do we get there? Sure, so the clearly erroneous legal error issue is a little bit unclear in terms of the case law. I think that it's my understanding of the standard of review is that the factual findings are certainly subject to clear error review. The factual findings underlying the reasonable expectation of privacy analysis, but the reasonable expectation of privacy analysis itself is a legal question. So you're saying it's a mixed question of law and fact? That's what the cases have fairly uniformly said, and I think- So what is clearly erroneous then from your perspective? Sure, I think one thing that is particularly clearly erroneous in terms of factual findings is the references to Mr. Mayberry's post-arrest statements. So the magistrate report- I'm sorry, I just- it's just sort of almost like a fact question. I'm trying to understand the case. I don't understand why you want those statements out. Those statements actually seem to me to be the only time when your client intimates at least- I wasn't abandoning anything. I didn't want to get robbed, so I left the drugs outside the door on the stairwell, and then after I got the money, I would go back and get them. So I don't mind the statements that that was my bag, and that those were my items. The problem with the robbed statement is there's nothing in the testimony that he said that to law enforcement in an interview after being arrested. Where that comes up is two years later. No, no, I understand that. I guess I'm just saying from my perspective, it seemed like- I mean, I agree with you that those statements don't come in, so it doesn't really matter, but they seem like those statements were what helped me to construct a reason why someone might have dropped the bag in the stairwell without abandoning it. I just don't want to get robbed in the hotel room, and as soon as I get my money, I'm going back for the bag. I think in- certainly in hindsight, it can put it in context, but because it's not an objective fact that's known at the time to the officers, yeah, I think that the way I view this is there's really not enough objective facts or actions to draw any inferences based on the information known to law enforcement about why the bag was set on the ground. It's a very brief period of time. I do want to touch on the Plainview issue. The government raises Plainview as an alternative sustaining ground on appeal, not argued below. The only issue, I think, in our- the only disputed element is the immediately apparent element. I think that what this court's cases say is that everyday objects that- whose predominant purpose are not criminal, can only be seized if there's an additional evidence. It's seized. It's an exception to the rule that you need a warrant for a seizure, but the police searched the backpack. They opened it up. They saw what was inside. You can't do that under the Plainview exception. That's right, Your Honor, and this- the Davis case from this year draws the distinction between seizing an object or seizing a container and searching it, and so I agree. Even if Plainview were to apply, it gets the bag. It does not get into the bag. It might allow them to seize it and go to the parking lot without a warrant. Correct, correct. I think they probably could do that under place regardless, but in terms of the seizure, the government argues in the brief that the officers took extensive investigatory measures, which they developed probable cause, tying my client to the crime. I just don't think the record supports that in any way. Well, what about the texting that occurred with Davis? The record indicates that Davis, or law enforcement using Davis's phone, receives a text from a number believed to be associated with the Phillips, the other individual, that he was arriving at the hotel and needed needed to be let in. The problem with the government's argument is that's essentially the only thing that ties- I see I'm out of time, if I can briefly conclude- the only thing that ties my client is the proximity to arriving when that text message arrives. And then he got another text message telling him, come on in, where to go, which he got out of the truck right after that. Maybe that's a coincidence. Goes into the hotel, follows the directions, maybe that's a There is, I think it's a fair characterization to say there's more to it than purely driving into a parking lot at the same time. But there are no, there's no evidence in the record that ties any specific action, any specific characteristic about Mr. Mayberry or his truck. He's walking into a hotel with a bag and a young child in the middle of the middle of the day, and I don't think that's sufficient. Does that answer your question? Okay, thank you very much. You've got some rebuttal time. Mr. Sachs. May it please the court, Ethan Sachs on behalf of the United States. I'd like to start with the abandonment issue that we've been discussing this morning. I think it would help to clarify what this court has laid out as the standard for abandonment. The most recent case is United States v. Small, but it has said so, used this description on multiple occasions. Small is 944 F3rd 490 at 502. Quote, abandonment is based on whether the complaining party retains a reasonable expectation of privacy in the articles alleged to be abandoned. Our brief cites on pages 21 to 22 a strong line of cases from multiple circuits around the country where a suspect or a person who leaves an item in a commonly accessible public area and the item is unattended, that that person has no reasonable expectation of privacy in that item. So, for example, we have Dickens, a 3rd Circuit case, a person leaves an item in a common staircase of an apartment building. We have Arboleda, the judge-friendly opinion from the 2nd Circuit, the person leaves an item on the fire escape of a building. There are others that we don't have in our brief that I'm happy to provide to the court if it would be helpful, but they involve a cooler put on a breezeway of an apartment building that's commonly accessible to the public. There's no people can't rely on any kind of sort of societal norm. Like, I put my suitcase in one place and I'm just like so fast and only dart over there and grab something. Can't I sort of assume that other airline passengers are unlikely to seize the moment to open my bag and see what's inside? I do think it's fair to consider the context surrounding the departure or the leaving of the bag or item somewhere. So for, you know, just another hypothetical, if someone left a bag on their table at a cafe, say, and went up to the front to get another cup of coffee and left their effects there, their phone, other things that indicated that that's their bag and hasn't been left unattended. I think in those circumstances, perhaps they have a reasonable expectation of privacy, but that's very far and different from what we have here. I think here we have a stairwell of a hotel that people, guests, members of the public, really anyone can walk in and up and do walk in and up. And not just that, but the door is closed. So Mr. Mayberry closes the door and walks out into the hallway and walks, the record shows, about 15 to 20 feet down the hallway with no indication of returning. So those facts, which again are reviewed for clear error, as we've discussed this morning, I think leave really no doubt that he left the bag unattended. So what would happen, let's say he drops the bag, goes out the door, door closes, you're walking down the hall, and he's suspicious something's not right, and he turns around, he's walking back to the stairwell. What would happen then? So that's a harder case for us, but I still think it may be that there is no reasonable expectation of privacy in a bag that is left in this public, commonly accessible area. It may be that that would reveal that Mr. Mayberry subjectively expected to go back and grab the bag, but I think the key question is whether that's reasonable. So are you asking us, I understand your point about the overlap between abandonment doctrine and reasonable expectations of privacy, but are you suggesting we just take the intent question out of it? Because I think we've also said several times it's all about whether this person intended to abandon the item. So we would And we look at objective indicia of that, but that's the bottom line question. Yes, we're not disputing that. I think Small puts it helpfully to say to determine whether the defendant maintains a reasonable expectation of privacy in an item. The court performs an objective analysis which considers the defendant's actions and intentions. So can I ask you a question about intent? So we have a lot of cases where the government sets up a controlled buy and then arrests the seller, and then the drugs are found some distance away, like around the corner in an alley or something like that. And so the defendant says, those aren't my drugs, and the police officers pretty consistently come to court and say, in my extensive experience, this is just how people set up the drug deals. They don't want to be robbed while they're making the exchange, so they put the drugs some distance away, and then they go get them. So did the police officers in this case not have that experience? Why didn't this just look to them like a classic case? He's not abandoning anything. He's going to get the money, and then he'll get the drugs. So two things in response. I don't think the record is perfectly clear on what the officers hear, what their experience was, but I have no reason to suspect that they didn't have that experience. So why didn't this just look to them like, obviously he doesn't intend to, this is just our standard case. He hasn't abandoned anything. He's just safekeeping during the deal. So I think it's important to here clarify that this is also small, and I think it gets at this issue. Abandonment is not based on whether all formal property rights have been relinquished. And so I think the intent really goes to the formal property rights. I think the defendant, or the hypothetical defendant in that circumstance, leaves the drugs in an area, the alley I think was your Honor's question. It is still their own, they own that property. We don't dispute that, and they may have an expectation of going back to that property. But I think what the cases say is when it's a common publicly accessible area, that's not a reasonable expectation of privacy. So it can be both the case, and this is probably right, that those drugs in the alley are abandoned, but also attributable to the defendant? That's correct, and I think that's frankly the perhaps most difficult part of understanding, at least for me, abandonment. Because it's really the distinction between abandonment not being based on whether all formal property rights have been relinquished, but really the expectation of privacy, whether the person whose bag it is retains a reasonable expectation of privacy in that. And so a couple of other things I'd like to emphasize is just to clarify. So is sort of the bottom line of your argument that in this circumstance, if you leave the bag in a publicly accessible place like that, and there's some separation by the closing of the door and that sort of thing, that that is an unreasonable expectation of privacy by the suspect? Yes, I think under the facts of here, undoubtedly it's unreasonable. And so you're saying intent to return doesn't matter? Well, excuse me. If there is sufficient evidence that you have abandoned any reasonable expectation of privacy. Because it seems to me that it's pretty clear they can coexist. You can intend to return, but yet still abandon reasonable expectation of privacy. So I think I understand Your Honor's point, and I think it's actually very helpful to read Arboleda, the Second Circuit case I mentioned, and the site of that is 633 F. 2nd. 985. And Judge Friendly there says expressly that it is irrelevant that the person whose property it is may later intend to return and pick up that property. And I think the best reading of that is it's irrelevant for abandonment purposes, but it's not irrelevant, as I was discussing earlier, for ownership claim or other property-related rights, which are separate from abandonment. So you can see we're sort of casting around to make sure the principle is narrow enough. So here's another hypothetical. The defendant leaves the bag, it's in the stairwell, goes out the door, door closes, and he's going down the hall. And the child says, Dad, you left your bag in the stairwell. And he says, yes, I'm going to go back and get it. And the police officers hear that. What happens then? Again, Your Honor, I think that is a harder case for us, and I will grant you that. I don't think that intent is totally irrelevant, but I do still think that that would be abandonment. I do still think that it's an unreasonable expectation of privacy for someone to leave their bag in a commonly accessible public staircase. I mean, I think – I don't want to fight the hypothetical, but assuming that the door is closed and that Mr. Mayberry has walked away and all that's different is the child says something, he responds, I still think that would be abandonment. But I don't think the court needs to go so far in making a very broad rule. I think if it would like, it could say, because it's clear error, and the case to support that is Farabi, abandonment is a finding, a fact that is reviewed for clear error. It could say, and we'd be happy with the court saying, in these circumstances, with these facts, it was not clearly erroneous for the district court to reach a finding of abandonment. And I agree that there may be some cases at the borderlines where we could imagine hypotheticals where it's difficult to determine whether the expectation of privacy is reasonable, but I don't think this case is one of them. What about the issue of the – is this a mixed question of fact and law? I mean, I don't think we've really been clear. We've said that abandonment is a fact call subject to a clear error analysis, but there is an overlaying component – overlying, I guess I should say – component of reasonable expectation of privacy. And that's – are you saying that's purely factual as well? I think the best reading is that it's purely factual in the context of abandonment because I think it's really sort of the same determination of abandonment. So the best reading of Farabi, I think, is that it is a questioning of fact – a finding of fact that's reviewed for clear error. I don't think it's outcome determinative here. I think under any standard of review, the district court's decision was sound. But I just think – I'm just wondering, do we need to spell that out in this case from your perspective? I don't think it's necessary to do so. We don't oppose the court doing that. I think no matter what standard of review applies, I think the court could assume any standard of review applies, and I think we would still say the district court's conclusion was more than sound in these circumstances. I just wanted to clarify one further thing about the record in this case about what the district court held as opposed to abandonment. The key pages of the record are JA 347 and 348, and I think reading that makes it very clear that this issue about considering statements after the fact or considering statements – the silence, post-arrest silence of Mr. Mayberry really didn't go to the heart of the abandonment analysis. If I could just quote briefly, the court says, quote, And then there's a new paragraph that says, So I think that's clear from that lineup that it's not – those factors aren't going to the abandonment analysis, but I also don't think it would have been improper for the court to consider his post-arrest silence. The Supreme Court has been clear that a defendant's post-arrest but pre-Miranda silence, which is what we have here, can be considered as evidence of guilt, and if we think it can be evidence of guilt, then certainly it can go towards a finding of abandonment. I'm sorry, so we're talking about the failure to claim ownership? Yes. Okay, and what is your position on – your first position is the district court didn't really rely on it, but I just want to make sure I understand your position about the relevance of the failure to – Sure, that it was not improper. We don't think, in fact, the district court did rely on it, but had it done so, we don't think – if making it a requirement may be a problem, but considering it as one factor of a constellation of many is not inappropriate. As Your Honor's question earlier with my colleague, I think, got at, well, of course, if he claims ownership of it, that would be relevant, so the inverse must be relevant, too, his silence. But I think what's helpful to think about there is the Supreme Court's description and holding that a defendant's post-arrest but pre-Miranda silence can be considered as evidence of guilt. We think, well, if it can be considered as evidence of guilt, certainly it can be considered as one of many factors of abandonment. But on your reasonable expectation of privacy, given the emphasis on that, would it even matter if he said, no, that's my bag? No, I don't think so. You think he could be telling the police officers, that is my bag, I own it and I want it. It doesn't matter. Like he left it unattended. That's correct. We think it still would be abandonment. That's interesting. That's pretty broad. That is broad. And, again, we don't think that it has to – it may be broad. We don't think it's particularly broad. We think it's in line with the cases that have – It is hard to reconcile. I'm just trying to think about kind of writing it. Like, yes, the key question is the intent of the defendant. The defendant says to the officers, here is my intent. That's my bag. I want it. I own it. It's mine. But he's abandoned. That just seems weird. I would just emphasize that that's really not what we have in the facts. I know, but it is your argument that it doesn't matter. You left something in public. Anyone could have opened it. Yes, I think that is. I think that's correct. And we really take that from the line of cases I mentioned before that say that. There's no reasonable expectation of privacy in property left in those sorts of areas. I'd just like to briefly touch on the probable cause. I think we've gone over it to arrest Mr. Mayberry. I think we've gone over it pretty clearly so far. But this is really, I think, a case in which the police took the extra steps that this court has instructed it to to corroborate a tip and confirm the tip. And it's not just the text message sent from Davis' phone to what ended up being Mr. Mayberry and hearing his response that he's arrived, but also, as Your Honor indicated earlier, that he went up to the second floor exactly at that moment that he was instructed to by Davis' phone, who he thought was Davis. If Your Honors have no questions on that, we would rest on our brief and ask that you affirm it. Thank you very much, Mr. Sachs. Mr. Warren, you've got some rebuttal time. Thank you, Your Honor. A couple brief points. Judge Keenan, I think to answer your question about the standard of review, and I apologize this case is not cited in my brief, United States v. Stevenson in its 396 F. 3rd 538 to 2005 case written by Judge Niemeyer, I think has the clearest explanation of the way the standard of review works in an abandonment case. Yes, Stevenson is quoted in Farrabee. Correct. For that proposition. That's right, Your Honor, and Stevenson was a real property case, and so there's kind of a more extensive property right analysis towards the end, but it does say it's a mixed question. Fundamentally, the problem in this case is when law enforcement arrives, Farrabee, Small, all of this court's cases say that the analysis of abandonment turns solely on the objective facts available to the officers of the words and actions. Here, I think to put this in context, law enforcement has no idea who Mayberry is. I'm sorry. Can I just, just when you said the standard, it turns on the objective facts in context of what? What is the underlying question that we're supposed to be asking? Did the defendant manifest a relinquishment of his reasonable expectation of privacy in a piece of property? Whenever this court addresses that issue, it typically comes up again in the context of flight or disavowal, and the vast majority of cases, there is some clear, actually all cases, there is some clear evidence of the defendant doing or saying something that relinquishes his or her expectation of privacy. Ardoleda, the Second Circuit case cited by my friend on the other side, the defendant hears law enforcement coming to a house, hears them knock on the door, throws a bag of cocaine out the window. How do we know that in this case he didn't get kind of suspicious? Like there's this stakeout in the parking lot. I mean, it seems entirely plausible that he realized something was up. It's plausible. Equally plausible is he's walking with a young child inside and has to pick the child up and open the door. We just don't know, and I think the most pertinent point about that is the government has the burden of demonstrating objective facts in words, objective facts of words or actions, and this case is really unlike any other abandonment case I've ever seen because law enforcement doesn't witness the act of alleged abandonment here or the defendant does not disavow or take some action in front of law enforcement. I'm sorry. You're saying if there had been a police officer at the bottom of the stairwell who saw him put the bag down, that would be a different case? I think that would be a different case in the sense of a law enforcement officer would be able to testify about the circumstances that lead to the bag being set down. But he walked in with the bag and he walked out without it. Are you saying that that leaves open the possibility that, I don't know what, someone swooped in and grabbed the bag? I don't understand. If you know he walked into the stairwell with the bag and out of the stairwell without it, what more could my hypothetical officer on the ground floor add to the equation? I think it depends obviously on the situation, but that officer would be able to provide information about the circumstances of the bag getting on the ground. How can we not pretty much to a certainty infer that he put the bag down before he walked out the door? I don't think there's any question. I think we can infer that. What I mean is in that circumstance where an officer sees that, there may be some circumstantial evidence of why the bag was put down or what behavior he was exhibiting when he put the bag down. I agree. There's no question he walks into the stairwell with the bag, sets the bag on the ground at some point, and goes out into the hallway. I think the example that was asked of counsel for the government about the café and the person who leaves food on the table or leaves possessions on the table, a cell phone, a wallet, any other number of personal possessions. As I understand it, where the government draws the line in this case is if law enforcement were to go to the café and the person in question was not at the table or perhaps had left the café to go to the restroom, law enforcement would be able to claim that those items had been abandoned, despite having no information about the circumstances under which the person at issue. I didn't understand Mr. Sachs to take quite that position. I think that is how I understand the government's argument. My client had the bag, left the bag on the other side of the door, and walks out of the stairwell. That is the way I understand the government's argument. I think where that is problematic is the government engages in what the Drakeford court said that law enforcement or the government can't do, which is labeling the defendant as a drug dealer and viewing the actions through that lens. This court has said that is not how we analyze the Fourth Amendment issues. Unless the court has any questions? You did have a third issue on withdrawal of the guilty plea, which you didn't address in opening argument. Is there anything other than what is in your brief? I'm happy to rest on my brief unless the court has any questions. Thank you very much. We appreciate the argument of both counsel. Mr. Warren, we want to know that you're court-appointed. The court wants to express its appreciation to you for undertaking that activity because without members of the bar like you who will step up and undertake these cases, we could not accurately and dispassionately dispense justice. We will come down and greet counsel and move on to our last case.
judges: G. Steven Agee, Pamela A. Harris, Barbara Milano Keenan